## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ARNOLD OIL PROPERTIES, L.L.C.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Case No.: CIV-08-1361 D** |
| | § | |
| **SCHLUMBERGER TECHNOLOGY** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Defendant** | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION FOR DECLARATORY JUDGMENT, AND BRIEF IN SUPPORT THEREOF

COMES NOW, Defendant SCHLUMBERGER TECHNOLOGY CORPORATION, and files this Motion for Summary Judgment, or, in the alternative, Motion for Declaratory Judgment, and Brief in Support Thereof, against Plaintiff ARNOLD OIL PROPERTIES, L.L.C. and shows this Court as follows:

### I. PURPOSE OF MOTION

**A.** Plaintiff cannot prevail on its claims for negligence, gross negligence, and breach of contract because the written contract executed by both Plaintiff and Defendant indemnifies and holds harmless Defendant against these claims asserted by Plaintiff.

**B.** Alternatively, if the Court does not enforce these terms within the contract then the Defendant would argue that the contract limits Plaintiff's recoverable damages to what is

owed to the Defendant under the contract.

## I. PROCEDURAL AUTHORITY

Defendant contends that summary judgment should be granted based on Fed.R.Civ.P 56 since there is a valid and enforceable written agreement and no evidence that would render its terms unenforceable.

## III. ADMITTED FACTS

The following numbered facts are a complete list of the material facts to which the moving party contends no genuine issue of fact exists.

1. On March 9, 2007, Plaintiff began drilling a well in Custer County, Oklahoma. Paragraph 5 of Plaintiff's Complaint.

2. The well was drilled to a depth of 13,444 feet.  Paragraph 7 of Plaintiff's Complaint.

3. Plaintiff contacted Defendant on May 31, 2007 concerning the providing of cement services to its well.  Paragraph 9 of Plaintiff's Complaint.

4. Plaintiff entered into a an enforceable contract with Defendant for cement services to Plaintiff's well (the "Contract").  Allegation in paragraph 39 in Defendant's Answer to Plaintiff's Complaint and admitted in paragraph 1 of Plaintiff's Answer to Defendant's Counterclaim.  The Contract is attached hereto as Exhibit "A".

5. Scott Thompson is Chief Operating officer for Plaintiff.  Exhibit "B", p. 14:1-14 from the deposition transcript of Scott Thompson.

6. Mr. Thompson testified that the Contract covered the services provided by Defendant to Plaintiff on June 2, 2007. Exhibit "B", pgs. 102: 15-25; 103:1-9.

7. Mr. Thompson knew in advance of June 2, 2007 that such a Contract with terms and conditions would be presented by Defendant to Plaintiff for execution. Exhibit "B", p. 104: 2-7.

8. Steve Kester was Plaintiff's well site representative and had authority to execute contracts presented by Defendant. Exhibit "C", p. 58:14-21.

9. Mr. Kester read the front page of the Contract and executed it on June 2, 2007. Exhibit "C", pgs. 157: 17-25, 158: 1-10, 128: 10-16.

10. On June 2, 2007, the cement job to Plaintiff's well was completed. Paragraph 24 of Plaintiff's Complaint.

11. Plaintiff filed this lawsuit on December 18, 2008, complaining about the cement services provided to it by Defendant on June 2, 2007.

## IV. CONTRACT PROVISIONS

### A. The Contract Indemnifies and Holds Harmless Defendant From and Against All Claims

1.      Within the Contract signed by Plaintiff, there are at least three provisions addressing Plaintiff's agreement to indemnify and hold harmless the Defendant from *all claims.* They are contained within the "General Terms and Condition" which are highlighted on the front of the Contract and printed in bold and all-capital letters on the back of the Contract.

First, under paragraph 9, entitled "**INDEMNITIES**," at subpart (a)(2), it states:

> **CUSTOMER SHALL BE RESPONSIBLE FOR AND HEREBY AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SCHLUMBERGER GROUP AND ITS INSURERS <u>FROM AND AGAINST ALL CLAIMS</u> ARISING OUT OF OR IN CONNECTION WITH DAMAGE TO OR LOSS OR DESTRUCTION OF PROPERTY...ARISING OUT OF OR IN CONNECTION WITH THE CONTRACT OR THE SERVICES PROVIDED HEREUNDER...**

(emphasis added) .

2.    Then, again, the Contract speaks to the fact that Plaintiff is holding the Defendant harmless against all claims for "property damages or loss that result from reservoir or underground damage." This can be found at paragraph 9(b) of the Contract signed by Plaintiff, part of which is as follows:

> **CUSTOMER ASSUMES ALL LIABILITY FOR AND AGREES TO PROTECT, DEFEND, INDEMNIFY, AND HOLD SCHLUMBERGER GROUP AND ITS INSURERS HARMLESS <u>FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION HEREWITH FOR</u>...(III) <u>PROPERTY DAMAGE OR LOSS THAT RESULT FROM RESERVOIR OR UNDERGROUND DAMAGE,</u> INCLUDING LOSS OF OIL, GAS, OTHER MINERAL SUBSTANCES, OR WATER OR THE WELL BORE ITSELF...**

(emphasis added).

The very essence of Plaintiff's Complaint is that Defendant's services caused underground damage and an inability to enter a certain reservoir forcing Plaintiff to conduct alternative procedures to correct the damage and enter the reservoir. *See* Plaintiff's Complaint at paragraphs 26-28.

3.    Lastly, paragraph 9(c) of the Contract signed by Plaintiff reaffirms the

provisions in subparts (a) and (b) above and tells the Plaintiff, again, that it is relieving the

Defendant of all liability and damages related to the services under the Contract.  It is set

forth below:

> **Application of Indemnities:   THE ASSUMPTION OF LIABILITY AND INDEMNITIES IN PARAGRAPHS (a) AND (b) ABOVE SHALL APPLY TO ANY LOSS, DAMAGE...OR CLAIM ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR THE SERVICES PROVIDED HEREUNDER WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING, WITHOUT LIMITATION...THE SOLE, JOINT, CONCURRENT OR GROSS, ACTIVE OR PASSIVE, NEGLIGENCE OR OTHER FAULT OF THE INDEMNITEE OR ITS CONTRACTORS OR SUBCONTRACTORS OR ITS OR THEIR EMPLOYEES, AGENTS, REPRESENTATIVES OR INVITEES.**

(emphasis added).

## B. Front of the Contract Alerts Plaintiff to Indemnity Provisions

As the Court can see, the front of the Contract explicitly tells the Plaintiff that

"INDEMNITY & HOLD HARMLESS PROVISIONS REQUIRING CUSTOMER AND

SCHLUMBERGER TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT

LIABILITY, OR FAULT OF THE OTHER."

## C. Indemnity is Mutual

The indemnity within the Contract is not solely for the benefit of the Defendant.  In

paragraph 9(a)(1) of the Contract, the Defendant is indemnifying Plaintiff from liability

arising out of the services provided.

## V. LEGAL AUTHORITY

### A. <u>Oklahoma Substantive Law Applies</u>

"A federal court sitting in diversity...must apply the substantive laws of the forum state." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997). Oklahoma law mandates that a contract will be governed by the laws of the state where the parties entered into the contract. *Williams v. Shearson Lehman Bros., Inc.*, 917 P.2d 998, 1002 (Okla. App. 1995). The Contract was signed and executed in Oklahoma, and should therefore be governed by Oklahoma's substantive laws.

### B. <u>Intent of Parties as Expressed in Contract Controls</u>

The general rules of contract interpretation apply to the interpretation of an indemnity contract. *Otis Elevator Co. v. Midland Red Oak Realty, Inc.* 483 F.3d 1095, 1101 (10th Cir. 2007). "Indemnity agreements are valid agreements and are governed by statute in Oklahoma." *Id. (*citing OKLA. STAT. TIT. 15 §§ 421-429 (1993)). The Court must give effect to the intent of the parties as expressed in the Contract. *Id.* Oklahoma law states that when examining a Contract, the Contract "must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Cossey v. Cherokee Nation Enters., L.L.C.,* 2009 WL 146685, at *17 (Okla. Jan. 20, 2009) (citing OKLA. STAT. TIT. 15 § 152 (2001). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the others." *Id. (*citing OKLA. STAT. TIT. 15 § 157 (2001)).

Examination of the Contract between Plaintiff and Defendant gives an unequivocally clear reading of the intention of the parties at the time of contracting. The indemnity provisions are in all-caps, emboldened, and clearly titled in the body of the Contract. Moreover, the signature page refers the signer to the indemnity provisions in the body of the Contract.

## C. Indemnity Provisions are Valid and Enforceable in Oklahoma

Under Oklahoma law, where the intent of indemnification is unequivocally clear from the examination of the Contract, such agreement is enforceable. *Fretwell v. Protection Alarm Co.,* 764 P.2d 149, 152-53 (Okla. 1988). In a contract indemnifying a party from its own negligence, the provision "will be strictly construed and must meet three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." *Otis,* 483 F.3d at 1101.

In *Fretwell*, the Supreme Court of Oklahoma upheld an indemnity provision in a contract between an alarm company and a homeowner which indemnified the defendant alarm company against any claims resulting from its negligence. The language of the contract provided that "[s]ubscriber agrees to indemnify, defend, and hold Protection (defendant) harmless from any and all claims and lawsuits...whether these claims are based upon...negligence...on the part of Protection, its agents, servants, or employees." *Id.* The plaintiff homeowners challenged the provision, claiming that the indemnity clause was

unenforceable because it sought to indemnify from one's own negligence.  The Court upheld

the indemnity provision, stating:

> Broadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid...[I]t is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract.

*Id.* (citing 41 Am. Jur. 2d *Indemnity* § 9 (1968)).

As to the first requirement for a valid indemnity agreement, the language of the

indemnity provisions in the Contract executed by Plaintiff and Defendant is almost identical

to the language in *Fretwell*.  The Contract expressly provides that Plaintiff agrees to protect,

defend, indemnify, and hold harmless Defendant against all claims arising out of the Contract

or services.  Moreover, the contemplation of simple or gross negligence as a future damage

for which indemnity will apply is made unequivocally clear in the Contract.

As to the second requirement, the Court must consider the equality of the contracting

parties' bargaining power by "first assessing the importance of the subject matter to the

physical or economic well-being of the party agreeing to the release," and second, "the

amount of free choice that party could have exercised when seeking alternate services."

*Manning v. Brannon*, 956 P.2d 156, 159 (Okla. Civ. App. 1997) (citing *Schmidt v. U.S.*, 912

P.2d 871 (Okla. 1996)) (internal quotations omitted).  Defendant is not aware of any evidence

at the time suggesting that Plaintiff's economic well-being depended on the cement services,

and that Plaintiff had no choice but to use the Defendant.

Lastly, indemnity provisions may not violate public policy. *Otis*, 483 F.3d at 1101. That is, they may not "injure public morals, public health or confidence in the administration of the law nor destroy the security of individuals' rights to personal safety or private property." *Id.* The indemnity provision in the Contract between Plaintiff and Defendant was contracted between two business entities and there is no evidence that its enforcement would negatively effect public morals, health, or security of individual's rights. This Contract concerns a service performed by one corporation for another and has no effect on public policy.

## VI. DECLARATION THAT DAMAGES ARE LIMITED

### A. <u>Parties Agreed to Limit Damages in this Contract</u>

If the Court finds the hold harmless provisions of the Contract unenforceable, Defendant, in the alternative, seeks declaratory relief under the Federal Declaratory Judgment Act, 22 U.S.C §§2201-2202. Defendant would ask the Court to declare that Defendant's exposure to damages is limited to the amount of the unpaid consideration for the services provided to Plaintiff by Defendant under the Contract. In the Contract executed by the parties, Exhibit "1," Plaintiff agreed in paragraph 12 to limit its damages as follows:

> **12.   LIMITATION OF LIABILITY:** Notwithstanding anything to the contrary herein, except as provided under Paragraph 9(a)1 (Personal and Property Indemnities), Schlumberger's liability arising from or in connection with this Contract (whether for indemnity, breach of contract, negligence, misrepresentation, or otherwise) shall not in any circumstances exceed the full value of the consideration owed to Schlumberger under this Contract.

## B. Clauses Limiting Damages are to be Enforced in Oklahoma

As a general rule of contracts, the contracting parties can by agreement limit their liability in damages to a specified amount at the time of making their contract. *See* Restatement of Contracts, § 339; *Fretwell*, 764 P.2d at 152. In *Fretwell,* the Court upheld a limitation of liability provision in the contract between the alarm company and the homeowners who were burglarized due to the alarm company's alleged negligence. The Court stated that the contract established a common law duty to perform with care, skill, reasonable expediency, and therefore it reasonably follows that since the contract established that duty, any lawful limitations in the contract may also limit the liability of the tortfeasor. *Id.* at 151. The contract established a duty to the promisee homeowners but it also limited the liability of the promissor and these limitations were clearly within the contemplation of the parties to the agreement. *Id.* The Court upheld the limitation of liability provision as neither unconscionable nor against public policy. *Id.* at 152.

Therefore, the limitation of liability provision in the Contract should be enforced, because under Oklahoma law parties can contractually limit their liability in damages. Per the Contract, Defendant's liability in damages, if any, should be limited to the amount of the unpaid invoice or consideration for the services provided to Plaintiff by Defendant under the Contract.

## VII. PRAYER

WHEREFORE, Defendant Schlumberger Technology Corporation prays for summary

judgment in its favor and dismissing each of Plaintiff's claims against this Defendant, or in the alternative, a declaratory judgment limiting the liability in damages recoverable from this Defendant, and for such other and further relief at law, or inequity, to which this Defendant may be justly entitled.

Respectfully submitted,

**HARGIS & HARPOLD, L.L.P.**


/s/ Grant P. Harpold
GRANT P. HARPOLD
Southern Federal District ID No. 10596
2 Riverway, Suite 1020
Houston, Texas  77056
(713) 751-0800 Telephone
(713) 751-0105 Facsimile


**FREDERIC DORWART, LAWYERS**
JOHN D. CLAYMAN
OBA#11790
124 East Fourth Street, Suite 100
Old City Hall
Tulsa, Oklahoma 74103
(918) 583-9922 Telephone
(918) 584-2729 Facsimile

**ATTORNEYS FOR DEFENDANT
SCHLUMBERGER TECHNOLOGY
CORPORATION**

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of September, 2009, I electronically filed a true and correct copy of this document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following ECF registrants:

Mr. Thomas G. Wolfe
Phillips Murrah, PC
Corporate Tower | Thirteenth Floor
101 N. Robinson
Oklahoma City, Oklahoma 73102

/s/ Grant P. Harpold
GRANT P. HARPOLD

# CONTRACT
## SCHLUMBERGER TECHNOLOGY CORPORATION



| SCNumber |
|---|
| 2205653120 |

**Invoice Mailing Address:**
ARNOLD OIL PROPERTIES

5600 NORTH MAY AVE SUITE 125
OKLAHOMA CITY, OK
US

| ARRIVE LOCATION | Date | Time |
|---|---|---|
| | 2007-Jun-02 | 4:00 PM |

Service Instructions
Cement 2 7/8in casing

| Customer PO | Contract | Service Description |
|---|---|---|
| | | Cementing - Cem Prod Casing |

| Well | State/Province | AFE | Rig |
|---|---|---|---|
| PITZER 1-2 | OK | | |

| Well Master: | API / UWI: | County/Parish/Block | Legal Location |
|---|---|---|---|
| 0630511703 | 35039220530001 | Custer | |

| Field | Customer or Authorized Representative |
|---|---|
| WILDCAT | KESTER, STEVE |

## PLEASE READ CAREFULLY - THIS SERVICE ORDER CONTRACT MUST BE COMPLETED BEFORE SCHLUMBERGER CAN PROVIDE GOODS OR SERVICES.

THIS IS A CONTRACT FOR GOODS AND SERVICES TO BE PROVIDED PURSUANT TO THE MASTER SERVICE AGREEMENT BETWEEN CUSTOMER AND SCHLUMBERGER. IN THE ABSENCE OF A MASTER SERVICE AGREEMENT, CUSTOMER AND SCHLUMBERGER AGREE THE GOODS AND SERVICES ARE PROVIDED PURSUANT TO THIS CONTRACT, **INCLUDING THE TERMS AND CONDITIONS ON THE BACK OF (OR ATTACHED TO) THIS CONTRACT,** WHICH CONTAIN WARRANTY EXCLUSIONS AND INDEMNITY & HOLD HARMLESS PROVISIONS REQUIRING CUSTOMER AND SCHLUMBERGER TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT LIABILITY OR FAULT OF THE OTHER.

I authorize work to begin as set forth in this Contract and represent that I have the authority of the customer to accept and sign this Contract.

Signature of Customer or Authorized Representative:

Sat Jun 02
20:33:39
2007

KESTER, STEVE

Signature of Schlumberger Representative:

Sat Jun 02
20:34:05
2007

Carnott, Christian

**EXHIBIT A**

**THE FOLLOWING GENERAL TERMS AND CONDITIONS OF THIS CONTRACT CONTAIN INDEMNITY AND CHOICE OF LAW PROVISIONS - PLEASE READ CAREFULLY.**

**1. Acceptance.** By requesting Schlumberger's services, equipment, or products, Customer voluntarily elects to enter into and be bound by these General Terms and Conditions.

**2. Definitions.**
a. Schlumberger – Schlumberger Technology Corporation, a Texas corporation.
b. Customer – the person, firm or other entity to which equipment and/or services are supplied or provided.
c. Group – Either Schlumberger or Customer and its respective parents, affiliates, subsidiaries, and each of their respective officers, directors and employees.
d. Claims - Damage, loss, liability, claims, demands and causes of action of every kind and character (including all costs and expenses thereof and reasonable attorney fees associated therewith).

**3. Terms.** Cash in advance unless Schlumberger has approved Customer's credit prior to the sale. Terms of sale for credit-approved customers are total invoice amount due at Schlumberger's office, Houston, Texas on or before the 30th day from the date of invoice. Customer shall pay interest on past due balances at the lesser of 1.5% per month or the maximum allowed by applicable state or federal law. If Customer's account becomes delinquent, Schlumberger shall have the right to revoke any and all previously applied discounts. Upon such revocation, the full invoice price without discount will become immediately due and owing and subject to collection. Customer hereby agrees to pay all fees directly or indirectly incurred in the collection of past due or delinquent accounts, including agency and attorney's fees.

**4. Taxes.** Customer shall pay any and all taxes or other levies (other than income taxes) imposed by any government, governmental unit or similar authority with respect to the charges made or payments received in connection with Schlumberger's services, equipment or products.

**5. Independent Contractor.** Schlumberger is and shall be an independent contractor with respect to the performance of the services set forth on this service Contract, and neither Schlumberger nor anyone employed by Schlumberger shall be the agent, representative, employee or servant of Customer in the performance of such services or any part hereof. When Contractor's employees (defined to include Schlumberger's direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La R.S. 23:1021 et seq., Customer and Schlumberger agree that all work and operations performed by Schlumberger and its employees pursuant to this Contract are an integral part of and are essential to the ability of Customer to generate Customer's goods, products and services for purposes of La R.S. 23:1061 (A)(1). Furthermore, Customer and Schlumberger agree that Customer is the statutory employer of Schlumberger's employees for purposes of La R.S. 23:1061 (A)(3). Irrespective of Customer's status as the statutory employer or special employer (as defined in La R.S. 23:1031 (C)) of Schlumberger's employees, Schlumberger shall remain primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Customer.

**6. Obligations of Customer.**
**(a) Well Conditions; Notification of Hazardous Conditions.** Customer, having custody and control of the well and superior knowledge of the conditions in and surrounding it, shall provide Schlumberger with all necessary information to enable Schlumberger to perform its services safely and efficiently. Schlumberger's equipment is designed to operate under conditions normally encountered in the well bore; however, if hazardous or unusual conditions exist, Customer shall notify Schlumberger in advance and make special arrangements for servicing such wells.
**(b) Chemicals.** The handling and disposal of any chemical, waste or by-product used or resulting from Contractor's performance of its services hereunder ("Chemicals") become the sole responsibility of Customer when such Chemicals are returned to the surface of the land or sea from below the rotary table. Customer understands and agrees that the Chemicals are the property of Customer and that Customer is the owner of the Chemicals. Customer agrees that it will transport and dispose of any such Chemicals in accordance with all applicable federal, state and local laws and regulations. Customer hereby waives, releases and agrees not to assert any claim or bring any cost recovery action against Schlumberger in connection with the use, generation, storage, transportation or disposal of Chemicals under any common law theories or federal, state or local environmental laws or regulations, now existing or hereinafter enacted, without regard to the cause or causes thereof or the negligence of any party.
**(c) Radioactive Sources.** If any radioactive source is lost in a well, at the well site, while being transported by Customer or a third party on behalf of Customer, or while under the custody or control of Customer, Customer shall exert its best efforts to recover the source and shall take precautions in order to avoid breaking or damaging the source. If the source is not recovered, or if the container is broken, Customer shall immediately comply with all applicable laws and regulations, including the isolation and marking of the location of the source.
**(d) Fishing Operations.** Customer shall assume the entire responsibility for operations in which Customer or its representatives attempt to fish for equipment but Schlumberger will, without assuming liability and if so requested by Customer, render assistance for the recovery of such equipment.

**7. Warranty for Products and Services.**
**(a)** Schlumberger represents and warrants that all services provided hereunder shall be performed in a good and workmanlike manner in accordance with good oilfield practices and that it shall exercise diligence to insure the correctness and safe transport of all log, test and other data. Schlumberger will give Customer the benefit of its best judgment based on its experience interpreting information and making written or oral recommendations concerning logs or tests or other data, type or amount of material or service required, manner of performance or predicting results. Nevertheless, all such recommendations or predictions are opinions only and in view of the impracticability of obtaining first-hand knowledge of the many variable conditions, the reliance on inferences, measurements and assumptions which are not infallible, and/or the necessity of relying on facts and supporting services furnished by others, **NO WARRANTY IS GIVEN CONCERNING THE ACCURACY OR COMPLETENESS OF LOG, TEST OR OTHER DATA, THE EFFECTIVENESS OF MATERIAL USED, RECOMMENDATIONS GIVEN, OR RESULTS OF THE SERVICES RENDERED. SCHLUMBERGER WILL NOT BE RESPONSIBLE FOR ACCIDENTAL OR INTENTIONAL INTERCEPTION OF OR TAMPERING WITH DATA BY OTHERS, NOR DOES SCHLUMBERGER GUARANTEE THE SAFE STORAGE OR THE LENGTH OF TIME OF STORAGE OR AGAINST LOSS OF ANY DIGITAL TAPES, OPTICAL LOGS OR PRINTS, OR OTHER SIMILAR PRODUCTS OR MATERIALS.**
**(b)** Schlumberger warrants that products (including but not limited to tools, supplies and materials) furnished hereunder shall conform to the quality and specifications represented. Schlumberger reserves the right, at its sole discretion, to use new, used or refurbished parts in the assembly of its products. Schlumberger warrants all its products to be free of defects in material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from the date of delivery ex Schlumberger's works, whichever occurs first. The above warranty does not apply to products that have been modified by anyone at Customer's request, supplied by Customer or purchased by Schlumberger at Customer's request, and/or that have been subjected to improper handling, storage, application, installation, operation or maintenance by anyone other than Schlumberger, and including but not limited to damage caused by aggressive fluids, lightning or improper voltage supply.
**(c)** Schlumberger's sole liability and Customer's exclusive remedy under the foregoing warranties are expressly limited to the repair, replacement or the refund of an equitable portion of the purchase price, at Schlumberger's sole option, of products or services which prove to be defective within the warranty period. A Customer claim pursuant to this warranty shall be made immediately upon discovery and confirmed in writing within thirty (30) days after discovery of the defect. Defective items must be held for inspection or returned to the original Schlumberger delivery point upon request. Schlumberger shall have the right to inspect the products claimed to be defective and shall have the right to determine the cause of such defect. Returned products shall become the property of Schlumberger.

**THE FOREGOING WARRANTIES FOR SERVICES AND PRODUCTS ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER ORAL, WRITTEN, EXPRESS, IMPLIED OR STATUTORY. IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY SHALL NOT APPLY. SCHLUMBERGER'S WARRANTY OBLIGATIONS AND CUSTOMER'S REMEDIES THEREUNDER (EXCEPT AS TO TITLE) ARE SOLELY AND EXCLUSIVELY AS STATED HEREIN.**

**8. Title and Risk of Loss**
**(a)** Unless otherwise agreed between the parties, title and risk of loss for products sold will pass to Customer ex Schlumberger's works. Customer will pay or reimburse Schlumberger for all freight, preparation, and in-transit insurance costs from the time of delivery. Customer agrees that title to and risk of loss for products will pass to and remain with Customer, even if Schlumberger agrees to store the products at a Schlumberger location until Customer requests delivery.
**(b)** The time, method, place or medium of payment will not in any way limit Schlumberger's rights in and to the products until payment has been received in full. On all orders, Schlumberger shall retain a security interest in the products to the extent of any unpaid balance of the purchase price therefor, and Schlumberger may use all reasonable efforts to retain and/or obtain possession of such products until such unpaid balance has been received and accepted by Schlumberger.

**9. INDEMNITIES**
**(a) Personnel and Property**
**1.** **SCHLUMBERGER SHALL BE RESPONSIBLE FOR AND HEREBY AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CUSTOMER GROUP AND ITS INSURERS FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH DAMAGE TO OR LOSS OR DESTRUCTION OF PROPERTY OF OR THE PERSONAL INJURY, ILLNESS OR DEATH OF ANY MEMBER OF SCHLUMBERGER GROUP OR ITS SUBCONTRACTORS, AGENTS, REPRESENTATIVES OR INVITEES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR THE SERVICES PROVIDED HEREUNDER.**
**2.** **CUSTOMER SHALL BE RESPONSIBLE FOR AND HEREBY AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SCHLUMBERGER GROUP AND ITS INSURERS FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH DAMAGE TO OR LOSS OR DESTRUCTION OF PROPERTY OF OR THE PERSONAL INJURY, ILLNESS OR DEATH OF ANY MEMBER OF CUSTOMER GROUP OR ITS CONTRACTORS (OTHER THAN SCHLUMBERGER) AND SUBCONTRACTORS, AGENTS, REPRESENTATIVES OR INVITEES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR THE SERVICES PROVIDED HEREUNDER.**
**(b) Special Indemnity.** **NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, CUSTOMER ASSUMES ALL LIABILITY FOR AND AGREES TO PROTECT, DEFEND, INDEMNIFY, AND HOLD SCHLUMBERGER GROUP AND ITS INSURERS HARMLESS FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION HEREWITH FOR: (I) PROPERTY DAMAGE, PERSONAL INJURY OR DEATH OR LOSS THAT RESULTS FROM BLOW-OUT, CRATERING, WILD WELL OR OTHER WORK PERFORMED TO CONTROL A WILD WELL; (II) PROPERTY DAMAGE OR LOSS THAT RESULTS FROM POLLUTION, CONTAMINATION, OR RADIATION DAMAGE, WHETHER CAUSED BY CUSTOMER'S FAILURE TO PROPERLY HANDLE, TRANSPORT OR DISPOSE OF ANY CHEMICALS AS REQUIRED BY PARAGRAPH 6.(b) HEREOF OR OTHERWISE, INCLUDING CONTAINMENT, CLEAN-UP AND REMEDIATION OF THE POLLUTANT AND CONTAMINATION, WHETHER OR NOT REQUIRED BY AN APPLICABLE FEDERAL, STATE OR LOCAL LAW OR REGULATION; (III) PROPERTY DAMAGE OR LOSS THAT RESULTS FROM RESERVOIR OR UNDERGROUND DAMAGE, INCLUDING LOSS OF OIL, GAS, OTHER MINERAL SUBSTANCES, OR WATER OR THE WELL BORE ITSELF, AND SURFACE DAMAGE ARISING FROM SUBSURFACE OR SUBSEA DAMAGE; (IV) COST TO CONTROL A WILD WELL, UNDERGROUND OR ABOVE THE SURFACE, INCLUDING ANY REDRILLING OR REWORKING AND RELATED CLEAN UP COSTS; (V) DAMAGE TO PROPERTY OWNED BY, IN THE POSSESSION OF, OR LEASED BY CUSTOMER, WELL OWNER, IF DIFFERENT FROM CUSTOMER (THE TERM "WELL OWNER" SHALL INCLUDE WORKING AND ROYALTY INTEREST OWNERS OR THE OWNER OF ANY DRILLING RIG, PLATFORM OR OTHER STRUCTURE AT THE WELL SITE); (VI ) SUBSURFACE TRESPASS; OR (VII) LOSS OF OR DAMAGE TO SCHLUMBERGER PROPERTY, EQUIPMENT, MATERIALS OR PRODUCTS, INCLUDING BUT NOT LIMITED TO, RECOVERY, REPAIR AND REPLACEMENT EXPENSES, WHEN SUCH LOSS OR DAMAGE OCCURS: (a) IN THE HOLE OR BELOW THE ROTARY TABLE, (b) WHILE IN TRANSIT OR BEING MOVED ON ANY FORM OF TRANSPORTATION OWNED OR FURNISHED BY CUSTOMER, (c) WHILE LOCATED AT THE WELL SITE WHEN SCHLUMBERGER PERSONNEL ARE NOT PRESENT, (d) AS A RESULT OF IMPROPERLY MAINTAINED PRIVATE ACCESS ROADS TO THE WELL SITE OR OUT OF THE INFERIOR CONDITION OF LEASE ROADS OR THE SITE, OR (e) WHILE BEING USED BY OR WHILE UNDER THE CUSTODY OR CONTROL OF ANY PERSON OTHER THAN A SCHLUMBERGER EMPLOYEE, WHETHER IN AN EMERGENCY OR OTHERWISE. WITH RESPECT TO (c) ABOVE, THE PROPERTY, EQUIPMENT, MATERIALS AND PRODUCTS WILL BE VALUED AT THEIR RESPECTIVE LANDED REPLACEMENT COST AND RENTAL CHARGES ON THE EQUIPMENT LOST OR DAMAGED IN THE HOLE SHALL CONTINUE TO BE PAID UP TO AND INCLUDING THE DATE ON WHICH SCHLUMBERGER RECEIVES NOTICE IN WRITING OF THE LOSS OR DAMAGE**
**(c) Application of Indemnities.** **THE ASSUMPTION OF LIABILITY AND INDEMNITIES IN PARAGRAPHS (a) AND (b) ABOVE SHALL APPLY TO ANY LOSS, DAMAGE, EXPENSE, INJURY, ILLNESS, DEATH OR CLAIM ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT OR THE SERVICES PROVIDED HEREUNDER, WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING, WITHOUT LIMITATION, UNSEAWORTHINESS, STRICT LIABILITY, ULTRAHAZARDOUS ACTIVITY, BREACH OF EXPRESS OR IMPLIED WARRANTY, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF EQUIPMENT, DEFECT OR "RUIN" OR OTHER CONDITION OF PREMISES, INCLUDING ANY CONDITIONS THAT PRE-EXIST THE EXECUTION OF THIS CONTRACT, OR THE SOLE, JOINT, CONCURRENT OR GROSS, ACTIVE OR PASSIVE, NEGLIGENCE OR OTHER FAULT OF THE INDEMNITEE OR ITS CONTRACTORS OR SUBCONTRACTORS OR ITS OR THEIR EMPLOYEES, AGENTS, REPRESENTATIVES OR INVITEES.**
**(d) Anti-Indemnity and Insurance Savings Clause.** If any defense, indemnity or insurance provision contained in this Contract conflicts with, is prohibited by or violates public policy under any federal, state or other law determined to be applicable to a particular situation arising from or involving any services, equipment and/or products hereunder, it is understood and agreed that the conflicting, prohibited, or violating provision shall be deemed automatically amended in that situation to the extent, but only to the extent, necessary to conform with, not prohibited by and avoid violating public policy under such applicable law.

**10. Incidental or Consequential Damages. IT IS EXPRESSLY AGREED THAT THE SCHLUMBERGER GROUP SHALL NOT BE LIABLE TO THE CUSTOMER GROUP FOR ANY PUNITIVE, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, ANY LOSS OF PROFITS OR BUSINESS INTERRUPTION OR LOSS OF USE, LOSS OF PRODUCTION OR LOSS, OF RIG TIME, REGARDLESS OF THE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE, NEGLIGENCE OR OTHER FAULT OF SCHLUMBERGER.**

**11. Insurance.** Each party, as indemnitor, agrees to support the indemnity obligations it assumes under Paragraph 9, by obtaining at its own cost, adequate insurance for the benefit of the other party as indemnitee, with contractual indemnity endorsements. To the extent each party assumes liability hereunder, such insurance shall waive subrogation against the indemnified Group and its insurers and name the indemnified Group as additional insured(s) and loss payee, and to the same extent such coverage shall be primary to that carried by the indemnified Group. Customer shall not self-insure without the written consent of Schlumberger.

**12. Limitation of Liability.** Notwithstanding anything to the contrary herein, except as provided under Paragraph 9. (a) 1., Schlumberger's liability arising from or in connection with this Contract (whether for indemnity, breach of contract, negligence, misrepresentation, or otherwise) shall not in any circumstances exceed the full value of the consideration owed to Schlumberger under this Contract.

**13. Employee Solicitation.** Except with the prior written consent of Schlumberger, Customer shall not directly, indirectly or through third parties solicit, recruit or induce any Schlumberger employee, consultant or representative to leave, terminate or otherwise end his/her association with Schlumberger in order to become an employee, consultant or representative of Customer until at least one (1) year has elapsed from Customer's receipt of the final invoice for the services.

**14. Miscellaneous.** Schlumberger shall not be liable for any delay or non-performance due to governmental regulation, labor disputes, hostile action, weather, fire, acts of God or any other causes beyond the reasonable control of Schlumberger. If services are performed or equipment or products furnished offshore or on navigable water, Federal Maritime laws shall govern this Contract; if performed or furnished in Texas, Louisiana, New Mexico or Wyoming, the laws of Texas shall apply; otherwise the laws of the state where the services are performed or equipment or products are furnished shall apply. Should any clause, sentence, or part of these General Terms and Conditions be held invalid, such holding shall not invalidate the remainder, and the Terms and Conditions shall be interpreted as if the invalid clause, sentence, or part has been modified or omitted, if necessary, as required to conform to the jurisdiction purporting to limit such provision.

**NO FIELD EMPLOYEE OF SCHLUMBERGER IS AUTHORIZED OR EMPOWERED TO ALTER THESE GENERAL TERMS AND CONDITIONS.**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

ARNOLD OIL PROPERTIES, L.L.C.,)
                               )
           Plaintiff,          )
                               )
-vs-                           )No. CIV-08-1361-D
                               )
(1) SCHLUMBERGER TECHNOLOGY    )
    CORPORATION,               )
                               )
    Defendant.                 )

DEPOSITION OF SCOTT THOMPSON

TAKEN ON BEHALF OF THE DEFENDANT

IN OKLAHOMA CITY, OKLAHOMA

ON JULY 28, 2009

# C O P Y

**EXHIBIT B**

REPORTED BY:  KASEY D. EGELSTON, CSR



MID-CONTINENT TOWER
401 South Boston, Suite 310
Tulsa, Oklahoma 74103
918-599-0507

depo@drreporting.com

ROBINSON RENAISSANCE
119 N. Robinson, Suite 650
Oklahoma City, Oklahoma 73102
405-235-4106

**REPORTING & VIDEO, INC.**

1       Q    Mr. Kester identified you as kind of

2   the operations manager.  Would that be a title

3   that you carried also?

4       A    That would be fair.

5       Q    But you were also the chief operating

6   officer?

7       A    Yes.

8       Q    Did you have both titles when you came

9   back in 2006?

10       A    Yes.  I mean, we're a small company.  I

11   think my title on my card says "chief operating

12   officer."  We don't have a lot of employees or a

13   lot of positions, so I guess that's a fair

14   statement.

15    Q    (By Mr. Harpold) Let me show you

16  Defendant's Exhibit 2 and ask if you've seen

17  that document before.

18              (Defendant's Exhibit Number 2 was

19              marked for identification purposes

20              and made a part of the record)

21          THE WITNESS:  Yes, I have.

22    Q    (By Mr. Harpold) What is your

23  understanding as to what Defendant's Exhibit 2

24  is?

25    A    This is the document that you need --

1  that the company man or the company supervisor

2  on location executes before Schlumberger will

3  perform a given job.

4      Q    That's the contract for the services to

5  be provided by Schlumberger on June 2, 2007?

6      A    Yes.  It's labeled a contract.  I know

7  -- I mean, as someone that's worked in the

8  field, I just know it's something that you have

9  to sign or they won't do it.

1  that is correct.

2    Q    You knew that before Schlumberger ever

3  even came out there to do the work, that they

4  would require a contract like Defendant's

5  Exhibit 2 to be executed, with the terms and

6  conditions as part of it?

7    A    Yes.

# CONTRACT
## SCHLUMBERGER TECHNOLOGY CORPORATION

**Schlumberger**

| | |
|---|---|
| **Invoice Mailing Address:** | **SCNumber** 2205653120 |
| ARNOLD OIL PROPERTIES | |
| 5600 NORTH MAY AVE SUITE 125 | **ARRIVE LOCATION**   Date 2007-Jun-02   Time 4:00 PM |
| OKLAHOMA CITY, OK | **Service Instructions** |
| US | Cement 2 7/8in casing |

| Customer PO | Contract | Service Description |
|---|---|---|
| | | Cementing - Cem Prod Casing |

| Well | | State/Province | | |
|---|---|---|---|---|
| PITZER 1-2 | | OK | AFE | Rig |

| Well Master | API / UWI | County/Parish/Block |
|---|---|---|
| 0630511703 | 35039220530001 | Custer |

| Field | | Legal Location |
|---|---|---|
| WILDCAT | | |

| | |
|---|---|
| | Customer or Authorized Representative |
| | KESTER, STEVE |

## PLEASE READ CAREFULLY - THIS SERVICE ORDER CONTRACT MUST BE COMPLETED BEFORE SCHLUMBERGER CAN PROVIDE GOODS OR SERVICES.

THIS IS A CONTRACT FOR GOODS AND SERVICES TO BE PROVIDED PURSUANT TO THE MASTER SERVICE AGREEMENT BETWEEN CUSTOMER AND SCHLUMBERGER. IN THE ABSENCE OF A MASTER SERVICE AGREEMENT, CUSTOMER AND SCHLUMBERGER AGREE THE GOODS AND SERVICES ARE PROVIDED PURSUANT TO THIS CONTRACT, **INCLUDING THE TERMS AND CONDITIONS ON THE BACK OF (OR ATTACHED TO) THIS CONTRACT,** WHICH CONTAIN WARRANTY EXCLUSIONS AND INDEMNITY & HOLD HARMLESS PROVISIONS REQUIRING CUSTOMER AND SCHLUMBERGER TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT LIABILITY OR FAULT OF THE OTHER.

I authorize work to begin as set forth in this Contract and represent that I have the authority of the customer to accept and sign this Contract.

Signature of Customer or Authorized Representative: _[signature]_   Sat Jun 02 20:33:39 2007

KESTER, STEVE

Signature of Schlumberger Representative: _[signature]_   Sat Jun 02 20:34:05 2007

Carnott, Christian

---

**DEFENDANT'S EXHIBIT**

Thompson

THE FOLLOWING GENERAL TERMS AND CONDITIONS OF THIS CONTRACT CONTAIN INDEMNITY
AND CHOICE OF LAW PROVISIONS - PLEASE READ CAREFULLY.

Acceptance. By requesting Schlumberger's services, equipment, or products, Customer voluntarily elects to enter into and be bound by these General Terms and Conditions.

**Definitions.**

a.  Schlumberger – Schlumberger Technology Corporation, a Texas corporation.

b.  Customer – the person, firm or other entity for which equipment and/or services are furnished or provided.

c.  Group – Either Schlumberger or Customer and its respective parents, affiliates, subsidiaries, and each of their respective officers, directors and employees.

d.  Claims – Damage, loss, liability, claims, demands and causes of action of every kind and character (including all costs and expenses thereof and reasonable attorney fees associated therewith).

**Obligations of Customer.**

**Warranty for Products and Services.**

THE FOREGOING WARRANTIES FOR SERVICES AND PRODUCTS ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER ORAL, WRITTEN, EXPRESS, IMPLIED OR STATUTORY. IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY SHALL NOT APPLY. SCHLUMBERGER'S WARRANTY OBLIGATIONS AND CUSTOMER'S REMEDIES THEREUNDER (EXCEPT AS TO TITLE) ARE SOLELY AND EXCLUSIVELY AS STATED HEREIN.

**INDEMNITIES**

a.  **Personal and Property**

NO FIELD EMPLOYEE OF SCHLUMBERGER IS AUTHORIZED OR EMPOWERED
TO ALTER THESE GENERAL TERMS AND CONDITIONS.

ARNOLD-0030

```
1            C  E  R  T  I  F  I  C  A  T  E

2

  STATE OF OKLAHOMA          )
3                            ) SS:
  COUNTY OF OKLAHOMA         )
4

5       I, Kasey D. Egelston, a Certified Shorthand

6  Reporter for the State of Oklahoma, certify that

7  SCOTT THOMPSON was by me sworn to testify the

8  truth; that the deposition was taken by me in

9  stenotype and thereafter transcribed by computer

10 and is a true and correct transcript of the

11 testimony of the witness; that the deposition

12 was taken by me on July 28, 2009, at 10:00 a.m.,

13 at 101 North Robinson, 13th Floor, Oklahoma

14 City, Oklahoma; that I am not an attorney for or

15 relative of either party, or otherwise

16 interested in this action.

17      Witness my hand and seal of office on this

18 4th day of August 2009.

19

20

21

22

23
                          _____
24                        Kasey D. Egelston, CSR
                          Oklahoma Certified Shorthand
                          Reporter, CSR # 1875
25
```

KASEY EGELSTON
Oklahoma Certified Shorthand Reporter
Certificate No. 1875
Exp. Date: December 31, 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

ARNOLD OIL PROPERTIES, LLC, )
)
        Plaintiff, )
) CASE NO.
VS. ) CIV-08-1361-D
)
SCHLUMBERGER TECHNOLOGY )
CORPORATION, )
)
        Defendants. )

DEPOSITION OF STEVE KESTER

TAKEN ON BEHALF OF THE DEFENDANT

IN OKLAHOMA CITY, OKLAHOMA

ON JULY 1, 2009

**EXHIBIT C**

REPORTED BY:  MICHELE WATSON, CSR

14      Q      As Arnold's well site representative,

15 you did have authority to order services like a

16 cement job from Schlumberger?

17      A      Yes.

18      Q      You had the authority to execute

19 delivery tickets and contracts that would have

20 been presented to you by Schlumberger?

21      A      Yes.

Case 5:08-cv-01361-D   Document 33   Filed 09/03/09   Page 25 of 29

**STEVE KESTER - July 01, 2009**

17      Q      You're calling it a ticket, the
18  document is entitled a contract.  You were
19  presented the document for the services provided
20  by Schlumberger to Arnold on June 2nd and you
21  signed it with that understanding?
22      A      That this is what they did.
23      Q      This contract reflects what
24  Schlumberger did for Arnold on June 2, 2007,
25  correct?

12b5bb5e-a365-41e3-8841-2dd8d047ecb0

**STEVE KESTER - July 01, 2009**

1      A      Yes.

2      Q      If I understood your testimony also,

3 the screen that was presented to you for signature

4 contained the page that's reflected here as Arnold

5 29, part of Exhibit 7?

6      A      Correct.

7      Q      Did you read the entire screen that

8 contains the information presented here in

9 Arnold 29, Exhibit 7 before you signed it?

10      A      Yes.

STEVE KESTER - July 01, 2009

10       Q     Go to Arnold 29 in Exhibit 7, which
11 the document is entitled "Contract."
12             Do you see that?
13       A     Yes.
14       Q     Is that your signature on that
15 document?
16       A     Yes.

# CONTRACT
## SCHLUMBERGER TECHNOLOGY CORPORATION

**Schlumberger**

| | SCNumber |
|---|---|
| | 2205653120 |

| Invoice Mailing Address: | | ARRIVE LOCATION | Date 2007-Jun-02 | Time 4:00 PM |
|---|---|---|---|---|

Invoice Mailing Address:
ARNOLD OIL PROPERTIES

5600 NORTH MAY AVE SUITE 125
OKLAHOMA CITY, OK
US

Service Instructions
Cement 2 7/8in casing

| Customer PO | Contract | Service Description |
|---|---|---|
| | | Cementing - Cem Prod Casing |

| Well | | AFE | Rig |
|---|---|---|---|
| PITZER 1-2 | State/Province OK | | |

| Well Master: 0630511703 | API / UWI: 35039220530001 | County/Parish/Block Custer | Legal Location |
|---|---|---|---|

| Field WILDCAT | Customer or Authorized Representative KESTER, STEVE |
|---|---|

## PLEASE READ CAREFULLY - THIS SERVICE ORDER CONTRACT MUST BE COMPLETED BEFORE SCHLUMBERGER CAN PROVIDE GOODS OR SERVICES.

THIS IS A CONTRACT FOR GOODS AND SERVICES TO BE PROVIDED PURSUANT TO THE MASTER SERVICE AGREEMENT BETWEEN CUSTOMER AND SCHLUMBERGER. IN THE ABSENCE OF A MASTER SERVICE AGREEMENT, CUSTOMER AND SCHLUMBERGER AGREE THE GOODS AND SERVICES ARE PROVIDED PURSUANT TO THIS CONTRACT, INCLUDING THE TERMS AND CONDITIONS ON THE BACK OF (OR ATTACHED TO) THIS CONTRACT, WHICH CONTAIN WARRANTY EXCLUSIONS AND INDEMNITY & HOLD HARMLESS PROVISIONS REQUIRING CUSTOMER AND SCHLUMBERGER TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT LIABILITY OR FAULT OF THE OTHER.

I authorize work to begin as set forth in this Contract and represent that I have the authority of the customer to accept and sign this Contract.

Signature of Customer or Authorized Representative: _____   Sat Jun 02 20:33:39 2007

KESTER, STEVE

Signature of Schlumberger Representative: _____   Sat Jun 02 20:34:05 2007

Carnott, Christian

ARNOLD-0029

**STEVE KESTER - July 01, 2009**

```
 1                    CERTIFICATION

 2  STATE OF OKLAHOMA              )
                                   )
 3  COUNTY OF OKLAHOMA             )

 4      I, MICHELE WATSON, Certified Shorthand

 5  Reporter within and for the State of Oklahoma, do

 6  hereby certify that the above-named STEVE KESTER

 7  was by me first duly sworn to testify the truth,

 8  the whole truth, and nothing but the truth in the

 9  case aforesaid, and that the above and foregoing

10  Deposition was by me taken in shorthand and

11  thereafter transcribed, and the same was taken on

12  July 1, 2009, at 10:00 a.m. at 101 North Robinson,

13  in Oklahoma City, State of Oklahoma, in pursuance

14  of and under the stipulations hereinbefore set

15  out, and that I am not an attorney for the parties

16  or a relative of either of said parties or

17  otherwise interested in the event of said action.

18      IN WITNESS WHEREOF, I have hereunto set my

19  hand and seal this 11th day of July, 2009.

20

21

22      MICHELE WATSON, CERTIFIED
        SHORTHAND REPORTER FOR THE
        STATE OF OKLAHOMA
23      Oklahoma CSR No. 1771
        My Commission Expires 12/31/09

24

25
```

12b5bb5e-a365-41e3-8841-2dd8d047ecb0