IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ARNOLD OIL PROPERTIES, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-08-1361-D |
| | ) | |
| SCHLUMBERGER TECHNOLOGY CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment or, in the Alternative, Motion for Declaratory Judgment [Doc. No. 33]. The defendant, Schlumberger Technology Corporation, seeks a determination as a matter of law pursuant to Fed. R. Civ. P. 56 that the plaintiff, Arnold Oil Properties, LLC, cannot prevail on its Complaint because the parties' written contract indemnifies and holds the defendant harmless from all claims. Alternatively, if the indemnity provision is not enforced, the defendant seeks a determination that the contract limits the plaintiff's recoverable damages to the amount owed to the defendant under the contract.[1] The plaintiff has timely opposed the Motion, and the defendant has filed a reply brief. The Motion is thus at issue.

**Standard of Decision**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant

---

[1] In its alternative request, the defendant purports to seek a declaratory judgment regarding the parties' rights under the contract pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. The defendant has not asserted such a counterclaim in its pleading. Thus, the Court understands the defendant to be seeking a determination as a matter of law of its affirmative defense that the plaintiff's damages are contractually limited. *See* Answer [Doc. No. 10], at 4 (Second Defense).

bears the initial burden of demonstrating the absence of a dispute of material fact that warrants summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**

The plaintiff began drilling a well in Custer County, Oklahoma, on March 9, 2007. The well was drilled to a depth of 13,444 feet. The plaintiff contacted the defendant on May 31, 2007, about providing cement services for the well. The plaintiff and the defendant entered into a written contract, a copy of which appears as Exhibit A to the Motion.

Scott Thompson is the plaintiff's chief operating officer. Mr. Thompson has testified that the contract covered cement services provided by the defendant on June 2, 2007. Mr. Thompson knew before June 2, 2007, that a written contract with terms and conditions would be presented for execution. The plaintiff's representative at the well site, Steve Kester, had authority to execute the contract and did so on June 2, 2007, the day that the cement job for the well was completed.

The plaintiff filed this action against the defendant on December 18, 2008, asserting claims of breach of contract, negligence, and gross negligence arising from the cement services provided on June 2, 2007. In opposition to the Motion, the plaintiff has presented facts and evidence to show

2

gross negligence by the defendant in its provision of cement services, a means of calculating measurable damages, and a lack of equal bargaining power between the parties.

**Discussion**

The construction of an unambiguous contract is a matter of law for the Court. *Walker v. Telex Corp.*, 583 P.2d 482, 485 (Okla. 1978); *Pitco Production Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003). Moreover, whether a contract is ambiguous and requires extrinsic evidence to clarify the doubt is also a question of law for the Court. *Pitco Production Co.*, 63 P.3d at 545. The determination of whether a contract is ambiguous is made only *after* application of the pertinent rules of construction. *State ex rel. Commissioners of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987), *cert. denied*, 488 U.S. 993 (1988).

The Oklahoma statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157);[2] a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*id*. § 163). The mere fact that the parties disagree or press for a different construction does not make an agreement ambiguous. *Pitco Production Co.*, 63 P.3d at 545. Moreover, indemnity agreements are generally valid in Oklahoma, and are governed by a

---

[2] "A contract must be considered as a whole ... without narrowly concentrating upon some clause or language taken out of context." *Mercury Investment Company v. Woolworth Company*, 706 P.2d 523, 539 (Okla. 1985).

3

statutory scheme which also sets forth specific interpretive rules. Okla. Stat. tit. 15, §§ 421-430; *see also Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 152-53 (Okla. 1988).

The Court has carefully considered the contract in the instant case, and upon application of the foregoing principles, determines that the provisions at issue in this case are clear and unambiguous. Thus, the construction of the contract is a matter of law for the Court, and the language of the contract is the only legitimate evidence of what the parties intended. *Pitco Production Co.*, 63 P.3d at 545-46.

**A.     Indemnity**

The contract here contains both an indemnity provision and a limitation of liability provision. Each party cites and relies on *Schmidt v. United States*, 912 P.2d 871 (Okla. 1996), in support of its position.[3] *Schmidt* involved a release purporting to exculpate the releasee from any liability or claims, and any loss, damage, or injury, "that may occur from *any cause whatsoever*" as a result of the activity in which the releasor was taking part. *Id*. at 872 (emphasis in original). The court stated that for such an exculpatory provision to be valid, it must satisfy three requirements: 1) its language must evidence a clear and unambiguous intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages; 2) at the time the contract containing the provision was executed there must have been no vast difference in bargaining power between the parties; and 3) enforcement of the provision must not be contrary to public policy. *Id*. at 874.

---

[3] The defendant also relies on *Fretwell*, discussed *infra* note 4, to support enforcement of the contract's indemnity provision.

It must be noted at the outset that the indemnification provision in the instant contract is quite different than the exculpatory release considered in *Schmidt*.[4]  Further, nothing in the indemnification provision here indicates an intent for it to operate like the exculpatory clause in *Schmidt*.

An indemnification contract is an agreement "to make good and save harmless the person, with whom the contract is made, upon an obligation of such person *to a third* person." *Thomas v. Williams*, 49 P.2d 557 (Okla. 1935), syllabus by the court (emphasis added).[5]  Clearly, it is the normal and customary operation of an indemnity agreement to protect the indemnitee against claims or liability asserted by third parties, not one of the parties to the indemnity agreement itself.  Nothing in the instant indemnity provision – paragraph 9 of the contract – suggests that the parties intended it to operate as an exculpatory release as opposed to an agreement to indemnify with respect to claims of third parties.[6]

Paragraph 9(a) reflects a mutual general indemnity obligation in the ordinary sense, and purports to apply to property and personal injury claims.  Paragraph 9(b), entitled "Special Indemnity," overlaps with paragraph 9(a) and more specifically obligates the "customer" – the

---

[4] For a discussion of the distinction, see *Federated Rural Electric Insurance Corp. v. Williams*, No. 97043, 2002 WL 31041863 (Okla. Civ. App. July 12, 2002) (unpublished).

[5] *See also Black's Law Dictionary* 692 (5th ed. 1979), defining an indemnity contract as an agreement "between two parties whereby the one undertakes and agrees to indemnify the other against loss or damage arising from some contemplated act on the part of the indemnitor, or from some responsibility assumed by the indemnitee, or from the claim or demand of a third person, that is, to make good to him such pecuniary damage as he may suffer."

[6] This distinction is further illustrated by *Fretwell*. The defendant incorrectly argues that the contract in *Fretwell* included an indemnity provision with "almost identical" language to the provision in this case. *See* Def.'s Mot. [Doc. 33] at 8.  In quoting the indemnity provision in *Fretwell*, however, the defendant omits a critical clause, which stated: "In the event any person, <u>not a party to this agreement</u>, . . . shall make any claim or file any lawsuit against [the defendant] for any reason whatsoever, [the customer] agrees to indemnify, defend and hold [the defendant] harmless . . . ."  *Fretwell*, 764 P.2d at 150 (emphasis added).

plaintiff here – to indemnify the defendant in connection with specific types of enumerated claims and losses. However, this clause also fails to reflect an intent that it should operate like an exculpatory release in favor of the defendant and against the plaintiff, as the defendant argues.

Furthermore, if paragraph 9 were intended to function as a complete exculpatory clause, paragraph 10 – which purports to eliminate the defendant's tort liability to its customer for some, but not all, types of damages – would be unnecessary. A plain reading of the entire contract compels a different conclusion.

Even if the Court were to apply the test enunciated in *Schmidt* to the indemnity provision here, the provision would fail to attain validity. The language of the provision fails to clearly reflect an intent that it would operate to bar claims *by the customer* against the defendant.

For these reasons, the defendant's motion for summary judgment enforcing paragraph 9 of the contract as an exculpatory clause precluding liability to the plaintiff, is denied.

**B.      Limitation of Liability**

The Court now turns to a consideration of paragraph 12 of the contract, entitled "Limitation of Liability."

Limitation of liability provisions in contracts have been enforced under Oklahoma law. In *Fretwell v. Protection Alarm Co.*, 764 P.2d 149 (Okla. 1988), the Oklahoma Supreme Court reasoned that since the tort cause of action alleged there arose out of a contractual relationship, it reasonably follows that the parties could also agree in their contract to limit the liability of the tortfeasor. The court went on to distinguish the limitation of liability provision from a liquidated damages clause. Because the provision made no attempt to forecast compensation for future harm,

6

the court reasoned, it was clearly an attempt to limit damages and outside the restrictions of Oklahoma statutes regarding liquidated damages clauses.

The court in *Fretwell* went on to hold that the provision there, which limited damages to $50.00, was neither unconscionable nor against public policy, and operated to so limit the plaintiff's damages despite an actual loss of $91,379.93.

Likewise, in *Elsken v. Network Multi-Family Security Corporation*, 838 P.2d 1007 (Okla. 1992), which also involved a contract for burglar alarm services, the court enforced a provision limiting liability for ordinary negligence. The court distinguished such provisions from clauses which seek to exempt a contracting party from its own negligence (exculpatory clauses), noting that the latter face statutory and public policy restrictions in Oklahoma.

The court in *Elsken*, however, identified two restrictions on the enforceability of liability-limiting clauses: 1) they may only operate to limit liability for ordinary negligence as opposed to gross negligence; and 2) the parties to the contract must not have been in an unequal bargaining position. *See id.* at 1010-11. In this case, the plaintiff asserts a claim of gross negligence to which the contractual provision does not apply.

Further, in assessing the parties' relative bargaining positions, courts in Oklahoma have considered two factors: 1) the importance of the subject matter to the physical or economic well-being of the party agreeing to the provision; and 2) the amount of free choice that party could have exercised when seeking alternative services. *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996); *Trumbower v. Sports Car Club of America, Inc.*, 428 F. Supp. 1113, 1117 (W.D. Okla. 1976). Notably, in finding an enforceable limitation of liability provision in *Fretwell*, the supreme court relied, in part, on the fact that the contract explicitly provided the customer with an option to pay

7

a higher fee to avoid the limit on recoverable damages. *See Fretwell*, 764 P.2d at 152. Thus, the free choice of the contracting party in that case was clear.

The plaintiff here asserts that the form contract used by the defendant, in essence, presents a take-it-or-leave-it deal, and that because the defendant's competitors in the industry utilize similar provisions, the plaintiff is left with little choice in obtaining similar services on more favorable terms. In contrast, the defendant generally asserts, in conclusory fashion, that the instant case lacks the element of coercion indicative of a disparity in bargaining power. A defendant using a motion for summary judgment to test an affirmative defense bears the burden to "demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). In this case, the defendant provides no factual basis to establish its limitation-of-liability defense. The plaintiff, on the other hand, has presented specific facts and evidence that, when viewed most favorably to the plaintiff as required by Rule 56, are sufficient to raise a genuine dispute of material facts. The nature of the parties' bargaining power vis-a-vis each other is clearly material, and the summary judgment record does not permit a determination of this issue as a matter of law. Thus, although the Court views with some skepticism the notion that a sophisticated business entity such as the plaintiff could, under the circumstances, find itself in a bargaining position significantly inferior to the defendant, the Court finds that contested questions of fact preclude summary judgment on the issue of enforceability of the limited liability provision of the contract.

## Conclusion

For the reasons stated herein, the Court finds that the defendant's motion for summary judgment should be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment or, in the Alternative, Motion for Declaratory Judgment [Doc. No. 33] is DENIED in its entirety.

IT IS SO ORDERED this 4th day of February, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE